Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.

AUBREY DWIGHT JONES, JR.

v. Record No. 090265

COMMONWEALTH OF VIRGINIA

OPINION BY SENIOR JUSTICE
ELIZABETH B. LACY
JANUARY 15, 2010

FROM THE COURT OF APPEALS OF VIRGINIA

Aubrey Dwight Jones appeals from a judgment of the Court of Appeals affirming his convictions in the Circuit Court of the City of Hampton for burglary while armed with a deadly weapon, conspiracy to commit burglary, and wearing body armor while committing a crime, violations of Code §§ 18.2-91, 18.2-22 and –91, and 18.2-287.2, respectively. Jones v. Commonwealth, Record No. 1201-08-1 (Feb. 3, 2009). He claims that the evidence was insufficient to prove that he committed these crimes. For the reasons stated below, we conclude that there is sufficient evidence in this record to support the convictions and therefore will affirm the judgment of the Court of Appeals.

Applying principles of appellate review, we recite the facts in the light most favorable to the prevailing party below, the Commonwealth. Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). In the early evening of April 9, 2007, Catherine Callahan and Jermaine Outlaw were at Outlaw's apartment when they began arguing. At one point, Outlaw called Callahan a "bitch." Callahan became upset and left the

apartment saying that she "was going to do something about it."
Callahan called Jones telling him she was upset with Outlaw's
"slander."  Following that conversation, Jones and Callahan met
and picked up a third person, Sheldon Parker.  The trio returned
to Outlaw's apartment at Callahan's direction to "discuss it"
with Outlaw.

When they arrived at Outlaw's apartment around 2:00 A.M. on
April 10, 2007, Callahan went to the door and was let in by
Jeremy Blackburn, another resident of the apartment.  Callahan
told Blackburn that she had some friends she was bringing into
the apartment and that "if anything was going to happen tonight,
[Blackburn was] not to worry about it."  Callahan returned to
the hallway outside the apartment and re-entered the apartment
with Jones and Parker.  Jones was wearing a gun on his waist and
Parker had an asp* in his hand.  Callahan showed the two men
Outlaw's bedroom and she went into the bathroom.  Jones and
Parker began knocking on Outlaw's bedroom door, asking Outlaw to
come out and talk.  Outlaw did not respond and Jones tried to
open the door but it was locked.  He then kicked in the door.
Outlaw was not in the bedroom but the window was open.  Parker
and Jones left the apartment to look for Outlaw.  Jones returned

---

*An "asp" or "asp baton" is an extendable bludgeoning weapon
capable of inflicting blunt force trauma.  See Gray v. Rhoads,
268 Va. 81, 84-85, 597 S.E.2d 93, 95 (2004).

a short time later saying that the police were outside.  Jones then told Timothy Ellyson, another resident of the apartment, to tell the police that they "were just chilling in the house watching television."

When the police arrived at the apartment they recovered a 9 millimeter semi-automatic handgun with rounds in the clip and a bulletproof vest from Jones.  They also recovered a pair of brass knuckles and a pair of black gloves.  An asp was found near the car Jones had driven that night.  Jones told the police officers that he was at Outlaw's apartment to "seek an apology" and that he carried a gun and wore body armor because of his job as a security officer.

DISCUSSION

1.  Statutory Burglary

We begin with Jones' claim that the evidence was insufficient to support his conviction for statutory burglary in violation of Code § 18.2-91.  Code § 18.2-91 defines statutory burglary as a violation of Code §§ 18.2-89 or 18.2-90 with the intent to commit assault and battery.  Code § 18.2-90 provides that a person armed with a deadly weapon commits a Class 2 felony if he enters a dwelling in the nighttime without breaking.

To sustain the statutory burglary conviction the Commonwealth was required to prove that at the time Jones

3

entered the apartment he intended to commit an assault and battery. See Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 140 (2008). Intent can be inferred from the facts and circumstances of a case and shown by the acts of the defendant. Id. at 652-53, 668 S.E.2d at 140.

The evidence in this case established that Jones went to Outlaw's apartment at Callahan's request because she was upset with Outlaw. When Jones entered the apartment he was wearing body armor and was armed with a firearm. His companion was carrying an asp. Upon entering the apartment Jones immediately went to confront Outlaw, banged on his bedroom door, and ultimately kicked in the door when Outlaw did not respond. The two men then rushed out of the apartment in pursuit of Outlaw who apparently had escaped through his bedroom window. These facts support a finding that Jones intended to assault Outlaw at the time Jones entered the apartment.

We reject Jones' argument that his statements to police that he went to the apartment only to get an apology from Outlaw and that he always wore body armor and carried a gun because of his job demonstrate that he did not have the intent to assault at the time he entered the apartment. Furthermore, the fact finder was entitled to discount these self-serving statements or view them as an effort to conceal his guilt. Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001).

4

Jones also argues that the evidence was insufficient to establish statutory burglary because he entered the apartment with the consent of one of its occupants.  Jones relies primarily on Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922), in which this Court reversed a conviction of burglary because the defendant had been given a key to the premises and had the owner's permission to enter at any time.  The Court stated that "a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house."  Id.  Jones argues that here an occupant of the apartment let Callahan into the apartment and voiced no objection when Jones entered the apartment.  Therefore, Jones concludes his entry into the dwelling place was not against the will of the occupant and will not support a conviction for statutory burglary.

We disagree with Jones' argument that Davis has any application to this case.  The Davis opinion makes it clear that "breaking," a required element of the crime charged under the law governing at that time, was central to that decision.  See 132 Va. at 523, 110 S.E. at 357.  However, "breaking" is not an element of the crime in the instant case because the entry occurred at night.  Code § 18.2-90; Finney v. Commonwealth, 277 Va. 83, 88, 671 S.E.2d 169, 172 (2009).  Furthermore, in Davis

5

this Court stated that a person authorized to enter a dwelling may nevertheless be guilty of burglary if that person "actually enters for the purpose of carrying out a previously formed design to commit a felony." Davis, 132 Va. at 524, 110 S.E. at 357. Thus, permission or authorization to enter may be negated by the invitee's or guest's intent for purposes of establishing burglary or statutory burglary. In the present case, any permission to enter the apartment given to Jones does not preclude a conviction for statutory burglary because that permission would have been negated by his intent to commit assault and battery, an intent fully supported by the record in this case as discussed above.

## 2. Conspiracy

Jones also claims that the evidence was insufficient to support his conviction for conspiracy. As discussed above, the record supports the finding that Jones entered Outlaw's apartment during the evening with the intent of committing assault and battery. To sustain a conviction for conspiracy in this case, the Commonwealth was required to show that there was an agreement between Jones and Callahan before they entered the apartment to commit the felony.

Code § 18.2-22, conspiracy to commit a felony, is violated when two or more persons agree to commit a felony offense, regardless of whether any act in furtherance of the underlying

6

crime has been performed. Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). Proof of an explicit agreement is not required and the requisite agreement may be established by circumstantial evidence. Id. Because of the nature of the offense, an agreement often may only be established by circumstantial and indirect evidence including the overt actions of the parties. Floyd v. Commonwealth, 219 Va. 575, 580-81, 249 S.E.2d 171, 174 (1978).

The record in this case shows that Callahan intended to exact revenge on Outlaw for statements made during their argument and contacted Jones and Parker for assistance in that endeavor. Neither Jones nor Parker was a party to the argument between Callahan and Outlaw but both agreed to go with Callahan to Outlaw's apartment. Jones told the police officer he went to Outlaw's apartment at Callahan's direction. Jones carried a firearm to the apartment and Parker had an asp. Callahan, on entering the apartment, told an occupant that if something happened that evening, he was "not to worry about it" because "it didn't have anything to do with [him]." Once at the apartment Jones acted at Callahan's direction by waiting in the hallway outside the apartment until Callahan brought him inside and then going to Outlaw's bedroom door at Callahan's direction.

This evidence supports a conclusion that Parker and Jones agreed to accompany Callahan to Outlaw's apartment to commit a

7

felony.  There clearly was an agreement to go to Outlaw's apartment for purposes stemming from Callahan's argument with Outlaw.  A pre-designed plan was shown when Parker and Jones waited outside the apartment until called inside by Callahan, when Callahan pointed out Outlaw's bedroom to Parker and Jones, and when Callahan retreated to the bathroom, leaving Jones and Parker to confront Outlaw.  Callahan's warning that "if anything" was going to happen further indicates that the group's visit was to exact more than an apology.  Accordingly, we reject Jones' claim that the evidence was insufficient to support his conviction for conspiracy to commit a felony.

### 3.  Body Armor

In his last assignment of error, Jones claims that his conviction for wearing body armor during the commission of a crime should be reversed because the evidence was insufficient to prove that he committed a "crime of violence" while wearing the bulletproof vest or that the vest was "body armor designed to diminish the effect of the impact of a bullet or projectile" as required by Code § 18.2-287.2.

We reject both claims.  First, a "crime of violence" for purposes of Code § 18.2-287.2 includes burglary.  See Code § 18.2-288(2).  There is no dispute that Jones was wearing a bulletproof vest when he committed statutory burglary.  Furthermore, as the Court of Appeals held, Jones did not object

to the testimony of the police officers at trial that characterized the vest worn by Jones as a "bullet proof vest" and "body armor."  The finder of fact was entitled to rely on this uncontested and uncontradicted testimony in determining whether Jones violated Code § 18.2-287.2.

For the reasons stated above, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>