COURT OF APPEALS OF VIRGINIA


Present:  Judges Haley, Petty and Powell
Argued at Salem, Virginia


TIMOTHY GORDON WILSON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2806-09-3                       JUDGE WILLIAM G. PETTY
                                                         NOVEMBER 2, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                              David A. Melesco, Judge

          Brian H. Turpin for appellant.

          Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        The appellant, Timothy Gordon Wilson, was indicted on one count of armed statutory

burglary in violation of Code § 18.2-91 and one count of aggravated malicious wounding in

violation of Code § 18.2-51.2.  Although Code § 18.2-91 prohibits the breaking and entering into

a dwelling house with the intent to commit larceny, certain felonies, or assault and battery, the

indictment alleged only that the defendant intended to commit a felony.  Following a bench trial,

the trial court convicted Wilson on all counts.  Wilson now appeals the armed statutory burglary

conviction, arguing that the evidence was insufficient to show he intended to commit an

applicable felony within a dwelling house at the moment he entered it.  We disagree and affirm.

        Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). Further, we note that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Therefore, we will not reverse the trial court's decision in this regard unless it is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see Code § 8.01-680.

Intent "is an essential element of burglary." Taylor v. Commonwealth, 207 Va. 326, 332, 150 S.E.2d 135, 140 (1966). It "'is the purpose formed in a person's mind at the time an act is committed.'" Carter v. Commonwealth, 280 Va. 100, 105, 694 S.E.2d 590, 594 (2010) (quoting Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). When an unlawful entry is made into a dwelling "the specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances." Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 767 (1971); see also Jones v. Commonwealth, 279 Va. 295, 299, 687 S.E.2d 738, 740 (2010) ("Intent can be inferred from the facts and circumstances of a case and shown by the acts of the defendant." (citing Vincent v. Commonwealth, 276 Va. 648, 652-53, 668 S.E.2d 137, 140 (2008))).

A person commits a statutory burglary under Code § 18.2-91 when, *inter alia*, he intends to commit "any felony other than murder, rape, robbery or arson" at the moment he breaks and

enters into a dwelling house.[1]  Malicious wounding and unlawful wounding are both felonies.[2]

Code § 18.2-51.  The only difference between the two is that the former requires proof of malice,

while the latter does not.  Id.  Thus, the Commonwealth was required to prove simply that the

defendant intended to inflict a bodily injury with "the specific intent to 'maim, disfigure, disable

or kill'" another person.  Commonwealth v. Vaughn, 263 Va. 31, 35, 557 S.E.2d 220, 222 (2002)

(quoting Code § 18.2-51).

Here, the record amply demonstrates facts and circumstances that support the trial court's

finding that Wilson intended to commit at least unlawful wounding when he broke and entered

the house at 505 Cedarbrook Drive.[3]  Wilson asks us to adopt a version of the facts that could be

more favorable to his case, but to do so would be in conflict with our standard of review.[4]  We

must view the facts in the light most favorable to the Commonwealth.  When so viewed, the facts

are that Wilson arrived at the house late at night (or very early in the morning) with John Pruitt

and Pruitt's brother.  Pruitt had previously threatened the occupants of the house over the phone

---

[1] Intending to commit larceny or assault and battery will also satisfy Code § 18.2-91.
However, the Commonwealth alleged in the indictment only that Wilson intended to commit a
proscribed *felony*, and therefore we do not consider the other grounds listed in Code § 18.2-91.

[2] The trial court was not required to find that Wilson intended to commit the more serious
offense of aggravated malicious wounding to find him guilty of armed statutory burglary—"any
felony other than murder, rape, robbery, or arson" will do.  Code § 18.2-91.

[3] Wilson argues only that he did not intend to commit a felony proscribed by
Code § 18.2-91.  Therefore, we do not review the sufficiency of the evidence with respect to the
other elements of armed statutory burglary.

[4] Wilson asks us to disbelieve certain eyewitness accounts because those eyewitnesses
admit that they had smoked marijuana and consumed alcohol in the hours leading up to the
incident.  He also claims that inconsistencies in those accounts undercut their credibility.
Certainly, the trial court was free to believe that drugs and alcohol substantially impaired the
witnesses' observational abilities, or that they did not.  Likewise, the trial court was free to
believe that the inconsistencies in the testimony undermined the credibility of that testimony, or
that the inconsistencies were the result of the hectic nature of the events that transpired.  Those
determinations were solely for the trial court to make, and we cannot say that it was plainly
wrong when it made them.

because he wanted to speak with his wife, who was also in the house, but she refused to speak to him. Pruitt suspected that his wife was having an affair. Accordingly, when he arrived at the house, he was enraged, and he armed himself with a construction level from his truck. Likewise, Wilson armed himself with a baseball bat,[5] and Pruitt's brother armed himself with a similar weapon.[6] Pruitt then knocked down the front door of the house, and the three men entered.

As soon as he entered, Wilson struck Anthony Barnes—one of the occupants—in the back of the head with the bat as Barnes retreated down a hallway. The blow sent Barnes to the ground and caused blood to splatter from Barnes' head. Pruitt and Pruitt's brother then joined the attack, and collectively the three men caused several serious injuries to Barnes. The attack was so severe that Barnes could not remember anything that occurred after he saw Pruitt enter the house. Not long after the attack, Wilson ran out of the house with Pruitt and Pruitt's brother, and the three were heard loudly yelling, "Woo-hoo!"[7]

The trial court could reasonably conclude from these facts that Wilson intended to commit at least unlawful wounding—a felony satisfying the intent requirement for armed statutory burglary—when he and two similarly armed companions broke down the front door

---

[5] When used as it was in this case, a baseball bat is a deadly weapon. See Pritchett v. Commonwealth, 219 Va. 927, 929, 252 S.E.2d 352, 353-54 (1979) (explaining that an object is a deadly weapon when it is "'likely to produce death or great bodily injury from the manner in which it is used'" (quoting Pannill v. Commonwealth, 185 Va. 244, 254, 38 S.E.2d 457, 462 (1946))).

[6] It is unclear whether the brother armed himself with an aluminum bat or a sledgehammer. In its findings, the trial court noted that Wilson admitted the brother armed himself with an aluminum bat.

[7] According to the Merriam-Webster dictionary, "woo-hoo" is a slang term "used to express exuberant delight or approval." "Woo-hoo," Merriam-Webster.com, http://www.merriamwebster.com/dictionary/woo-hoo (last visited October 15, 2010).

and entered the house armed with a baseball bat.[8]  That conclusion only becomes stronger when we consider that immediately upon entering the house, Wilson struck Barnes in the back of the head with such force that he lost consciousness.  Thus, we hold that the trial court had credible evidence before it that supported its finding that Wilson intended to commit a felony when he broke into and entered the house.  Therefore, we affirm.

Affirmed.

---

[8] Given the manner in which the bat was used, the trial court quite properly concluded that Wilson intended to maim, disfigure, disable, or kill the person he brutally assaulted.  See Johnson v. Commonwealth, 53 Va. App. 79, 101-02, 669 S.E.2d 368, 378-79 (2008) (holding that a fact finder may infer that a person intended to maim, disfigure, disable, or kill another when the person wielded his fists as a deadly weapon).