COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder and Petty
Argued at Richmond, Virginia


AINOY SIHARATH

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1351-12-2                        JUDGE WILLIAM G. PETTY
                                                    APRIL 16, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

Steven P. Hanna for appellant.

Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ainoy Siharath appeals his conviction of possession of forged bank notes with the

knowledge that they were forged and with the intent to utter or employ as true in violation of

Code § 18.2-173. On appeal, Siharath argues that the evidence was insufficient to convict him

because he did not know that the bank notes were forged, and because he did not have the intent

to utter or employ them as true. For the reasons set forth below, we affirm the judgment of the

trial court.

I. BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal. "On appeal, 'we review the evidence in the light most favorable to the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On March 5, 2011, Siharath was a passenger in a vehicle that was stopped for speeding in Dinwiddie County, Virginia. Sheriff's Deputy Kenneth Droddy approached the car to conduct the traffic stop. While standing outside the car, Deputy Droddy smelled the distinct odor of burnt and green marijuana emanating from the car. Deputy Droddy subsequently searched the vehicle's occupants. Deputy Droddy found the following items while searching Siharath: a ten-dollar bill and a Carolina identification card in his right pocket; a wallet in his right, rear pocket that contained two fifty-dollar bills and a twenty-dollar bill; and what appeared to be ten twenty-dollar bills in his left, rear pocket. After searching the vehicle's occupants, Deputy Droddy searched the vehicle and found 20.2 grams of marijuana.

Deputy Droddy arrested Siharath and the other occupants of the vehicle. They were transported to the Sheriff's Office. At the Sheriff's Office, Deputy Droddy discovered that Siharath's identification card was "not correct."[1] Further, Deputy Droddy discovered that the ten twenty-dollar bills that were in Siharath's left, rear pocket were counterfeit. Deputy Droddy asked Siharath if this was all the counterfeit money that he had. Siharath answered in the affirmative. Siharath also stated that the bills were given to him by a friend but that he had not tried to pass the money at any stores. After further questioning, Siharath said that he had been unemployed for over two years. Deputy Droddy said that Siharath did not indicate any surprise when he was confronted with the fact that the bills were counterfeit. Finally, one of the other

_____

[1] The Commonwealth attorney did not ask Deputy Droddy to elaborate what he meant by this phrase. Siharath, in the same prosecution, however, pled guilty to falsely identifying himself to a police officer, in violation of Code § 18.2-82.1, and fraudulent use of an operator's license for identification, in violation of Code § 18.2-204.1. These convictions are not before us.

occupants of the vehicle said that they were on their way to Atlantic City, while the second said they were going to visit family in Maryland and then to Nags Head.

At trial, Deputy Droddy testified that "a blind person could see [the bills] were counterfeit." Deputy Droddy also noted that he had no training in detecting counterfeit money, but the counterfeit nature of the bills "jumped out at [him]" because of their look and feel.[2] Further, the counterfeit twenty-dollar bills contained only three different serial numbers. Siharath stipulated at trial that the ten twenty-dollar bills were counterfeit.

United States Secret Service Special Agent Charles Hardemant testified as an expert in counterfeit currency. Special Agent Hardemant testified that the ten twenty-dollar bills were "definitely counterfeit." Special Agent Hardemant pointed to various security features that were absent from Siharath's bills. Special Agent Hardemant also testified to the differences between innocent possession of counterfeit currency and guilty possession. The key difference, according to Special Agent Hardemant, is the location where the currency is kept. Generally, an innocent possessor of counterfeit currency will commingle the counterfeit currency with genuine currency. A guilty possessor of counterfeit currency, however, will segregate the counterfeit currency from the genuine currency. The reason for this is "so that the person in possession of the counterfeit [currency,] when they are making purchases and attempting to be deceptive[,] can keep their money separated from the genuine currency."

After hearing the evidence, the trial court held that Siharath had knowledge that the currency was counterfeit based on his conversation with Deputy Droddy, the number of bills, and

---

[2] The Commonwealth introduced the ten counterfeit bills in evidence. The Commonwealth also proffered the genuine bills seized from Siharath as a demonstrative exhibit "so the Court can see and feel the differences in the currency." We presume the trial court took advantage of the Commonwealth's suggestion. We have also viewed the exhibit and note that Deputy Droddy's observation regarding the quality of the counterfeit bills is not unreasonable.

other circumstances. The trial court further held that Siharath intended to utter or employ the counterfeit bills as true based on the quantity of the bills, the segregation of the bills, Siharath's lack of employment, and Siharath's travel destination, Atlantic City. Accordingly, the trial court convicted Siharath of possession of forged bank notes with the knowledge that they were forged and with the intent to utter or employ as true in violation of Code § 18.2-173. This appeal followed.

## II. ANALYSIS

Siharath argues that the evidence was insufficient to prove that he knew the currency was counterfeit and that he had the intent to utter or employ the currency as true. We disagree.

"'When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (alteration in original) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). Thus, an "'appellate court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Id. (quoting Britt v. Commonwealth, 276 Va. 569, 573-74, 667 S.E.2d 763, 765 (2008)). Instead, "'[T]he relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "'This familiar standard gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. (omission in original) (quoting Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010)).

Code § 18.2-173 makes it illegal for any person to "have in his possession forged bank notes[3] . . . knowing the same to be forged or base, with the intent to utter or employ the same as true."[4] To be convicted under Code § 18.2-173, three elements must be met: (1) the person must possess counterfeit currency[5]; (2) the person must have knowledge that the currency is counterfeit; and (3) the person must have the intent to utter or employ the counterfeit currency as true.

To determine these elements, we may, and often must, look to circumstantial evidence. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Although the Commonwealth's evidence must exclude all reasonable hypotheses of innocence, "The hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel." Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983). We do not view circumstantial evidence in isolation: "'While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)).

---

[3] "[B]ank notes," as used in the statute, is a reference to currency. See Ronald J. Bacigal, Virginia Practice Series: Criminal Offenses and Defenses 315 n.69 (2012-2013).

[4] If the person possesses ten or more forged bank notes, then it is a Class 6 felony. If the person possesses less than ten forged bank notes, then it is a Class 3 misdemeanor. Code § 18.2-173.

[5] At trial, Siharath stipulated that the bank notes were forged. Therefore, this element is not at issue in this appeal, and we need not address it.

In this case, the evidence, taken as a whole, is sufficient to show that Siharath knew that the currency was counterfeit and that he intended to utter or employ the currency as true.

## A. Knowledge

Siharath argues there is no evidence which indicates that he knew the currency was counterfeit. We disagree.

To convict under Code § 18.2-173, the evidence must show that the defendant knew the currency to be counterfeit. Absent a confession, we must look to circumstantial evidence to determine whether a defendant had the requisite guilty knowledge. Spitzer v. Commonwealth, 233 Va. 7, 9, 353 S.E.2d 711, 713 (1987).

Here, the circumstantial evidence was sufficient to establish that Siharath knew the currency he possessed was counterfeit. At no point during his conversation with Deputy Droddy did Siharath disclaim knowledge that the twenty-dollar bills were counterfeit. In fact, Siharath admitted obtaining the counterfeit currency from a friend. Deputy Droddy asked Siharath, "[I]s this the only counterfeit money you have?" Siharath answered the question in the affirmative. Further, Siharath attempted to conceal his identity by giving the deputy false identification. "A false . . . account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004).

Additionally, Deputy Droddy testified at trial that he had "zero" training in detecting counterfeit currency. Even without counterfeit currency detection training, however, Deputy Droddy said that the fraudulent nature of the twenty-dollar bills "jumped out at him." According to Deputy Droddy, the fraudulent nature of the twenty-dollar bills was so apparent that "a blind person could see [the bills] were counterfeit." See United States v. Rice, 652 F.2d 521, 526 (5th

Cir. 1981) ("[E]ven an untrained eye could detect their bogus nature."); see also United States v. Armstrong, 16 F.3d 289, 293 (8th Cir. 1994) ("The bills were of sufficiently poor quality to alert even an untrained eye to their bogus nature."). Cf. Carlton v. Commonwealth, 23 Va. App. 629, 633, 478 S.E.2d 730, 732 (1996) (holding that the Commonwealth failed to prove the defendant passed a lottery ticket knowing it had been altered where the store clerk did not observe that the ticket had been altered, and the record showed that an expert was required to determine that the ticket in evidence had been altered).

The totality of the circumstantial evidence establishes ample evidence of Siharath's knowledge that the bills were counterfeit. Siharath admitted receiving the counterfeit currency from a friend. Siharath admitted this was the only counterfeit currency he possessed. The fraudulent nature of the currency was readily apparent. This evidence excludes every reasonable hypothesis of innocence. Therefore, we hold that the evidence, taken as a whole, was sufficient to establish that Siharath was aware the currency he possessed was counterfeit. Accordingly, we cannot say that the trial court's finding that Siharath knew the currency was counterfeit is plainly wrong or without evidence to support it.

### B. Intent to Utter or Employ

To be convicted under Code § 18.2-173, Siharath must also have had the intent to utter or employ the counterfeit currency as true. Siharath argues there is no evidence which indicates that he intended to utter or employ the counterfeit currency as true. We disagree.

Intent, like knowledge, is a mental state that can be proven by circumstantial evidence, and it is a question of fact to be determined from the evidence. See Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994). "Intent can be inferred from the facts and

circumstances of a case and shown by the acts of the defendant." Jones v. Commonwealth, 279 Va. 295, 299, 687 S.E.2d 738, 740 (2010).

Federal case law provides a helpful guidepost in determining what circumstances establish that a defendant had the intent to utter or employ counterfeit currency as true.[6] One such circumstance is the segregation of counterfeit currency from genuine currency. See United States v. Tucker, 820 F.2d 234, 236 (7th Cir. 1987) ("[I]ntent may be inferred from the segregation of genuine from counterfeit money."); United States v. Perez, 698 F.2d 1168, 1171 (11th Cir. 1983) (finding the most important "surrounding circumstance" to be that the defendant segregated his counterfeit currency from the genuine currency); United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979) ("The fact that [the defendant] had earlier used $100 bills to buy goods and had the two remaining bills in a pocket other than the one in which he kept his legitimate currency are additional circumstantial factors from which the jury could have reasonably concluded that he knowingly had possession of counterfeit bills with intent to defraud.").

Here, the circumstantial evidence was sufficient to establish that Siharath intended to utter or employ the counterfeit currency as true. Siharath segregated his counterfeit currency from his genuine currency. Deputy Droddy discovered that Siharath had a genuine ten-dollar bill in his right, front pocket and a wallet in his right, rear pocket, which held two genuine

---

[6] 18 U.S.C. § 472 provides

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

fifty-dollar bills and a twenty-dollar bill. The ten, counterfeit twenty-dollar bills were found in Siharath's left, rear pocket. Thus, Siharath clearly segregated the counterfeit currency from the genuine currency. And, as Special Agent Hardemant testified, the purpose of segregating counterfeit currency is so that the possessor can readily distinguish it from their genuine currency. Accordingly, a reasonable inference that arises out of this circumstance is that Siharath segregated his counterfeit currency with the intent to utter or employ it as true.

Further, Siharath had been unemployed for two years with no readily identifiable source of income. In spite of his unemployment, Siharath was traveling to Atlantic City, a location commonly known for gambling and recreational activities. Not only was Siharath taking this trip, he was taking it with only $130 in genuine currency. The trial court could reasonably conclude, based on these circumstances, that Siharath was carrying the $200 in counterfeit currency to supplement his $130 in genuine currency to pay for the expenses of his trip to Atlantic City.

The trial court reviewed the evidence and held that Siharath intended to utter or employ the counterfeit bills as true. The trial court based its decision on the quantity of the bills, the segregation of the bills, Siharath's lack of employment, and Siharath's travel destination, Atlantic City. We hold that the evidence, taken as a whole, was sufficient to establish that Siharath intended to utter or employ the counterfeit currency as true.

### III. CONCLUSION

For the foregoing reasons, we affirm Siharath's conviction.

Affirmed.