COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and Lorish
Argued at Richmond, Virginia


JASON FRANKLIN MAXWELL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0693-23-2              CHIEF JUDGE MARLA GRAFF DECKER
                                                          JULY 30, 2024
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
                                   Robert H. Morrison, Judge

            John A. Terry (Law Office of John A. Terry, PLLC, on briefs), for
            appellant.

            Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
            Attorney General; John Beamer, Assistant Attorney General, on
            brief), for appellee.


        Jason Franklin Maxwell appeals his convictions for grand larceny, petit larceny, and

property damage.  He challenges the sufficiency of the evidence supporting his convictions.[1]  We

conclude that the evidence, viewed under the proper standard, establishes that Maxwell

committed the crimes.  Accordingly, we affirm the convictions.

---

*This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Maxwell also assigned error to the trial court's denial of his motion to dismiss his
charges on statutory speedy trial grounds.  At oral argument, counsel waived this assignment of
error, and, therefore, we do not consider the issue.  The Court appreciates counsel's candor as it
"embodies the ethical duties expected of a legal advocate and is held in high esteem."  *Nimety v.
Commonwealth*, 66 Va. App. 432, 436 n.3 (2016).

BACKGROUND[2]

In July 2021, Bryan Harris operated a car repair business. On July 19, 2021, James Wilkerson took his Chevrolet Cavalier to the shop to have a "loose tailpipe" inspected. The car was in "good condition," undamaged except for a cracked dashboard and a dent from a prior collision. Wilkerson gave the keys to Harris and left his car in the shop parking lot. Harris placed the keys in his office inside the shop.

While Wilkerson's car was in the shop parking lot, Maxwell visited and asked Harris whether he had any cars for sale. Harris informed him there were none, and Maxwell left.

On July 21, after Maxwell's visit, Harris locked the shop and went on vacation. That weekend, on either July 23 or 24, Harris's brother Marvin dropped his Pontiac off at the shop. When he left his car, its license plates were affixed to its front and rear bumpers. The same weekend, Wilkerson drove past the shop and noticed that his Cavalier was no longer parked outside. He assumed it was inside the shop being repaired.

When Harris returned from vacation on July 25 and went to the shop, the Cavalier was no longer there. Harris did not report the vehicle stolen, however, because he believed Wilkerson had retrieved it using a spare key. In addition, the entrances to the shop were locked.

On July 29, Wilkerson went to the shop and learned that his car was missing. Harris searched his office and discovered that Wilkerson's keys were also gone. After Harris reported the vehicle stolen, police interviewed both Wilkerson and Harris. An investigator with the Charlotte County Sheriff's Office found no signs of "forced entry" into the shop but determined that he could unlock the entrances without a key using a credit card.

---

[2] On appeal, we review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court. *See Spratley v. Commonwealth*, 298 Va. 187, 193 (2019).

On July 31, Sergeant Adams with the Halifax County Sheriff's Office saw Wilkerson's Cavalier traveling on a highway. He attempted to stop the car but it "sped off." The driver led the sergeant on a high-speed pursuit before losing control. The car came to a stop in someone's yard, and Adams saw Maxwell, the Cavalier's driver and sole occupant, get out of the car. Maxwell attempted to flee on foot but was apprehended.

Police had the Cavalier towed to Harris's shop. Wilkerson inspected the car and noticed that yellow stripes had been painted on the sides and trunk. The smell of gas permeated the car due to gas cans in the trunk. Additionally, "some of the air vents" in the dashboard were "busted out" and the radio had been removed. The trunk contained a radio, but Wilkerson did not confirm whether it was the one removed from the dashboard. An insurance company assessed the damage to the Cavalier and paid Wilkerson about $3,000 in compensation.

Police determined that the license plate affixed to the rear bumper of the Cavalier belonged to Marvin's Pontiac. They notified Marvin, who examined his Pontiac at Harris's shop and confirmed that someone had removed his license plate from the rear bumper and replaced it with a different one.

A grand jury indicted Maxwell for burglary, property damage, grand larceny, and two counts of petit larceny. At trial, after the Commonwealth's case-in-chief, Maxwell made a motion to strike the charges. He argued that the evidence failed to prove his identity as the perpetrator. The trial court denied the motion.

Maxwell presented evidence in his defense. He and Jimmy Stouffer testified. Both witnesses were convicted felons.

According to Maxwell, he bought the already-damaged Cavalier from an acquaintance, Shann Hancock. Maxwell denied burglarizing the shop and stealing any property. He testified that in early July 2021, he visited Harris's shop because he wanted to buy a car. He suggested he

- 3 -

also contacted Hancock and discussed buying a car from him. On July 28, 2021, Maxwell's own car needed a new taillight, so he drove it to the home of his friend, Jimmy Stouffer, and borrowed some tools to fix it. He said that while working on his car in Stouffer's driveway, Hancock and his girlfriend arrived in Wilkerson's Cavalier. The girlfriend offered to sell the car to Maxwell. Maxwell testified he agreed and followed the couple to another location where they completed the transaction.[3]

During his testimony, Maxwell also attempted to explain his efforts to flee from police. He stated that on that day, his friend "R.J." was driving while Maxwell accompanied him. Maxwell testified that when Sergeant Adams tried to stop them, R.J. accelerated, exclaiming, "I've got warrants." R.J. lost control of the Cavalier and it "settled in a yard." Maxwell said that R.J. fled on foot.

Maxwell believed that the Cavalier was in "fair condition" when he bought it, although the dashboard was "cracked and leaking" and the "radio . . . wasn't in it." He said that he bought a new radio to replace the missing one and put it in the trunk. He also claimed he received a "bill of sale" proving that he bought the Cavalier from Hancock but had misplaced it and Hancock died before trial.

At the conclusion of the evidence, the trial court denied Maxwell's renewed motion to strike. The jury convicted Maxwell of grand larceny, petit larceny, and property damage. *See* Code §§ 18.2-95, -96, -137. It acquitted him of burglary and the other charge of petit larceny. He was sentenced to a term of incarceration totaling fifteen years and twelve months, with thirteen years and eight months suspended.

---

[3] Stouffer confirmed that Maxwell visited his apartment in late July to borrow tools to repair his vehicle. He testified that during the visit, a man and woman arrived in Wilkerson's Cavalier. The Cavalier had yellow stripes painted on its sides. According to Stouffer, the woman spoke to Maxwell for twenty to thirty minutes before she and Maxwell returned to their vehicles and departed.

ANALYSIS

On appeal, Maxwell contends that the evidence fails to support his convictions because the Commonwealth did not present any direct evidence of guilt and did not exclude his hypothesis of innocence.[4]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In conducting this analysis, an appellate court views the evidence in the light most favorable to the Commonwealth. *See Spratley v. Commonwealth*, 298 Va. 187, 193 (2019). This

---

[4] Maxwell also contends that the jury rendered inconsistent verdicts by convicting him of the larceny charges while acquitting him of burglary. He argues this is so because the evidence suggested that the thief could not have stolen Wilkerson's car without breaking into Harris's shop to steal the keys. *See generally McQuinn v. Commonwealth*, 298 Va. 456, 459 (2020) (recognizing that a jury might reach inconsistent verdicts "out of a sense of grace and leniency"). We do not consider this argument because he failed to raise it below as required by Rule 5A:18. Maxwell does not ask us to invoke Rule 5A:18's ends-of-justice or good-cause exception, and we will not do so sua sponte. *See, e.g.*, *Burford v. Commonwealth*, 78 Va. App. 170, 184 (2023).

deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Vasquez*, 291 Va. at 247 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)).

Additionally, "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "The reasonable-hypothesis principle 'merely echoes "the standard applicable to every criminal case."'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Vasquez*, 291 Va. at 250). "It is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Whether an alternative hypothesis of innocence is reasonable is a factual question that will be reversed on appeal only if plainly wrong. *Rams v. Commonwealth*, 70 Va. App. 12, 28 (2019).

We consider the appellant's arguments in the context of these guiding legal principles.

I.  Grand Larceny and Petit Larceny

Larceny is "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner" of the possession "of that property permanently." *Pijor*, 294 Va. at 509 (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)). A theft is classified as either grand larceny or petit larceny depending on the value of the goods taken. *Compare* Code § 18.2-95, *with* Code § 18.2-96.

Under settled law, once it is established that someone committed a larceny, "the unexplained possession of recently stolen goods permits" a fact finder to infer "larceny by the possessor." *Burton v. Commonwealth*, 58 Va. App. 274, 284 (2011) (quoting *Winston v.*

*Commonwealth*, 26 Va. App. 746, 757 (1998)); *see Dobson v. Commonwealth*, 260 Va. 71, 74-76 (2000) (recognizing the constitutionality of this principle when treated as a permissive inference). Proof of exclusive possession of recently stolen property shifts to "the accused the burden of accounting for that possession." *Burton*, 58 Va. App. at 284 (quoting *Hope v. Commonwealth*, 10 Va. App. 381, 385 (1990) (en banc)). When the possession is "unexplained or falsely denied," the inference applies. *See Lunsford v. Commonwealth*, 55 Va. App. 59, 63 (2009) (quoting *Cannady v. Commonwealth*, 210 Va. 533, 535 (1970)).

In performing its role as the finder of fact, a jury is "entitled to discount" a defendant's "self-serving statements or view them as an effort to conceal his guilt." *See Jones v. Commonwealth*, 279 Va. 295, 300 (2010). It is equally well established that a fact finder may infer a criminal defendant's "'consciousness of guilt' from his efforts to avoid detection." *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022) (quoting *Palmer v. Commonwealth*, 14 Va. App. 346, 349 (1992)). In addition, evidence of the defendant's motive and opportunity to commit the offenses may be probative of his identity as the criminal actor. *See Shahan v. Commonwealth*, 76 Va. App. 246, 260 (2022).

The record demonstrates that between July 21 and July 25, 2021, Wilkerson's Cavalier was taken from Harris's shop without permission. And between July 23 and July 29, 2021, someone stole a license plate from Marvin's Pontiac, which was also parked at the shop. Shortly after the thefts, on July 31, 2021, a police officer saw Maxwell in exclusive possession of the stolen Cavalier and stolen license plate, which was affixed to the car. From that evidence, the jury could infer that Maxwell stole Wilkerson's Cavalier and Marvin's license plate when both pieces of property were at Harris's shop between July 23 and July 25, 2021. *See Montague v. Commonwealth*, 40 Va. App. 430, 437 (2003). Although several days elapsed between the thefts and when Maxwell was found in possession of the stolen property, that delay does not defeat the

larceny inference as Maxwell contends. *See, e.g.*, *Wilborne v. Commonwealth*, 182 Va. 63, 66 (1943) (holding that possession occurring even three months after a theft can raise the inference), *cited with approval in Montgomery v. Commonwealth*, 221 Va. 188, 190 (1980). It was also reasonable for the jury to conclude that Maxwell fled from the police because he committed the thefts and knew he was found in possession of the stolen property. *See Aley*, 75 Va. App. at 68. Further, the fact that Maxwell visited the shop seeking to buy a new vehicle shortly before the thefts permitted the jury to determine that he had the motive and opportunity to commit them. *See Shahan*, 76 Va. App. at 260.

Maxwell testified that he bought the car from an acquaintance and that person died before trial. However, the jury, as the finder of fact, was permitted to disbelieve him and conclude that he was "lying to conceal his guilt." *See Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018)). *See generally Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (recognizing that the fact finder is responsible for evaluating the credibility of witnesses). Maxwell also claimed that he was merely a passenger in the stolen car and fled only because the driver started the high-speed chase. Again, the jury was entitled to reject this version of events and instead conclude from the totality of the circumstances that Maxwell, found in exclusive possession of the car, tried to elude police, first in the car chase and then on foot, because he had stolen the car and the license plate. *See Rams*, 70 Va. App. at 33-36. For these reasons, the evidence was sufficient for the jury to reject Maxwell's hypothesis of innocence. *See Moseley*, 293 Va. at 465.

Based on the evidence, the jury was entitled to conclude beyond a reasonable doubt that Maxwell stole the car and the license plate.

II. Property Damage

A conviction for property damage under Code § 18.2-137(B) requires proof that "a person perform[ed] a volitional act that damage[d] the property of another *and* the person specifically intend[ed] to cause damage to the property by that act." *Knight v. Commonwealth*, 61 Va. App. 148, 162 (2012) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 49 (2011)). Maxwell argues that the Commonwealth failed to prove both that he is the person who damaged the car and, if he did so, that the damage was intentional.[5] As with any element of an offense, identity and intent may be proven by circumstantial evidence. *See Young v. Commonwealth*, 70 Va. App. 646, 653 (2019).

The evidence in this case, when viewed in the light most favorable to the Commonwealth, proved that between July 23 and July 25, 2021, Maxwell stole Wilkerson's car and Marvin's license plate from Harris's shop. On July 31, 2021, a law enforcement officer saw Maxwell driving the stolen Cavalier with the stolen license plate from a different car. Maxwell not only fled from the police, but he also falsely testified at trial about how the car came into his possession. *See Maust*, 77 Va. App. at 703. *See generally Ricks v. Commonwealth*, 39 Va. App. 330, 337 (2002) (stating that when a defendant's "flight might have been attributable to several causes, 'consciousness of guilt' [can] be inferred by the trial court if any one of those [possible] causes was the . . . offense [at issue]").

---

[5] Maxwell contends that the "larceny inference" does not apply to his conviction for property damage. We agree generally that the principle that exclusive possession of recently stolen property can create a permissive inference that the same person stole the property is limited. *See Cannady*, 210 Va. at 535; *Bazemore v. Commonwealth*, 210 Va. 351, 352-53 (1969). Nevertheless, we do not need to consider the legal question of whether the inference applies to Maxwell's property damage conviction because the evidence is sufficient without application of the inference. *See generally Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates" that appellate courts "decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

When the car was reclaimed from Maxwell, yellow stripes had been painted on the sides and trunk of the car that were not present prior to the theft. Additionally, "some of the air vents" in the dashboard were "busted out," and the Cavalier's radio had been removed. Based on the evidence, a reasonable fact finder could conclude that after stealing the car, Maxwell painted stripes to change its appearance and make it harder to identify as Wilkerson's stolen Cavalier. *See generally Commonwealth v. Garrick*, ___ Va. ___, ___ (May 9, 2024) ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not."). After all, the evidence supports the reasonable inference that Maxwell took Marvin's license plate and put it on the Cavalier for the same reason. Further, the jury could reasonably conclude that Maxwell damaged the air vents in the dashboard when intentionally removing the radio from the car he stole.

Even so, Maxwell suggests that the Commonwealth did not exclude the possibility that a third party damaged the car during the "time between when the vehicle went missing and when it was found in [Maxwell]'s possession." Again, "[t]he reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Moseley*, 293 Va. at 464 (quoting *Hudson*, 265 Va. at 513). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Ragland v. Commonwealth*, 67 Va. App. 519, 531 (2017) (quoting *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014)). Whether an alternative hypothesis of innocence is reasonable is a factual question that will be reversed on appeal only if plainly wrong. *Rams*, 70 Va. App. at 28. "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating

evidence renders the hypothesis of innocence unreasonable." *Vasquez*, 291 Va. at 250 (quoting *Hudson*, 265 Va. at 513).

The jury was instructed on the law and the elements of the crime. As fact finder, it weighed all the evidence and rejected the theory that a third party damaged the car. Instead, the jury concluded that Maxwell damaged it in an effort to conceal it and by removing the radio. *See Garrick*, ___ Va. at ___ ("The appellate standard of review precludes an appellate court from drawing inferences that were rejected by the factfinder . . . ."). The passage of time between the theft and Maxwell's capture simply does not equate to innocence as a matter of law in light of the evidence presented at trial. It is clear that the jury was entitled to reject the appellant's hypothesis of innocence. *See Vasquez*, 291 Va. at 250. It did so here, and that decision is supported by the record.

Taken as a whole, the evidence, including the appellant's actions and testimony, supports the jury's finding that he intentionally damaged the stolen car. *See Moseley*, 293 Va. at 465. That decision was supported by the record and was not plainly wrong. Consequently, the evidence was sufficient to prove beyond a reasonable doubt that Maxwell committed the offense of damaging property in violation of Code § 18.2-137.

CONCLUSION

We hold that the evidence was sufficient and supports the jury's conclusions that the appellant committed grand larceny, petit larceny, and property damage. Accordingly, we affirm the convictions.

*Affirmed.*