# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 13th day of February, 2025.*

Present: All the Justices

SH'KISE FAZION CAPPE,                                                                         APPELLANT,

  against        Record No. 240055
                Court of Appeals No. 1161-22-1

COMMONWEALTH OF VIRGINIA,                                                        APPELLEE.

UPON AN APPEAL FROM A
JUDGMENT RENDERED BY THE
COURT OF APPEALS OF VIRGINIA.

Upon consideration of the record, briefs, and argument of counsel, the Court is of the opinion that the decision of the Court of Appeals should be affirmed.

Sh'Kise Cappe was convicted of first-degree murder, use of a firearm to commit murder, and conspiracy. Cappe appealed to the Court of Appeals, challenging the sufficiency of the evidence and the trial court's ruling excluding the testimony of a family friend, Lakesha Kirkendall. Kirkendall would have testified that the person shown on a video is *not* Cappe. The Court of Appeals affirmed his conviction, holding that the evidence was sufficient on each of those charges, and, although the Court of Appeals held that the trial court erred in excluding Kirkendall's testimony, it further concluded that the error was harmless. *See Cappe v. Commonwealth*, 79 Va. App. 387 (2024). One of the judges on the panel dissented on the second point, writing that the error in excluding Kirkendall's testimony was not harmless. *Id.* at 412-15. Cappe appealed to this Court.

I. THE STANDARD OF REVIEW COMPELS AFFIRMANCE ON CAPPE'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE.

At trial, Cappe moved to strike the evidence against him. On appeal, he renews his challenge to the legal sufficiency of the evidence against him. We affirm the judgment of the Court of Appeals that the evidence against Cappe was sufficient to sustain his convictions.

Under settled law, "we review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015). We review the evidence in the "light most favorable" to the Commonwealth, the prevailing party in the trial court. *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003). In so doing, we "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam) (citations omitted).

"An appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010).

Code § 18.2-32 provides that "[m]urder . . . by any willful, deliberate, and premeditated killing . . . is murder of the first degree . . . . All murder other than capital murder and murder in the first degree . . . is murder of the second degree . . . ."

The Commonwealth presented evidence that, at 11:24 p.m., a white sedan arrived at the Newport Harbors apartment complex. A few minutes later, three men emerged from the vehicle, one by one. Each man was wearing a different colored sweatshirt. Video footage tracked the

2

men's movements throughout the apartment complex. At 11:31 p.m., while the three men were moving around the complex, the victim, Stephen White, placed a call to a phone number associated with Teso Blizzard. Six minutes after, the three men are shown on the video raising their weapons at the victim and firing multiple shots into him. Video footage placed the time of the shooting at 11:37 p.m. The victim died of multiple gunshot wounds. Police arrived at the scene a few minutes later, at 11:40 p.m.

The faces of two of the three shooters are visible from video footage stills, but the pictures are of poor quality. The jury observed the video footage and the stills. At the prompting of defense counsel, and without objection by the Commonwealth, the jury also had the opportunity to observe Cappe from multiple angles.

Police recovered three types of cartridge cases from the crime scene: seventeen 7.62x39 cartridge casings; sixteen 5.7x28 cartridge casings; and eight 9-millimeter cartridge casings.

Surveillance camera footage captured video of the car from which the three men emerged. The car was a white four-door sedan, with a sunroof, no front license plate, and its front tire appeared to be "dark." Several days later, in response to a tip, Cappe was arrested. A car was parked outside of the residence where Cappe was arrested. The car was a four-door white sedan with a sunroof. The car's front tires were dark with brake dust. It was missing its front license plate. The vehicle was registered to Cappe. When police searched the car, they found a wallet that contained Cappe's driver's license, Social Security card, and debit card. From the car, police recovered a Tulammo brand 7.62x39 cartridge casing – one that matched one of the calibers of ammunition found near White's body – as well as a copper-jacketed bullet fragment. A firearms expert testified that the cartridge casing located in the vehicle matched cartridge casings located at the crime scene and were ejected by the same firearm upon firing.

3

News outlets covered the shooting.  One of them, WAVY TV on local channel 10, broadcast an image of the shooters that police had taken from the crime scene video.  The same day that channel 10 broadcast this photo, Cappe texted Dajour Pemberton:

Cappe: Get low.

Pemberton: Why you say that?

Cappe: Check 10

Pemberton: WTF, man. Fuck, get rid of everything ASAP.

Two hours later, Cappe texted: "Shit's gone."

Police also used cell phone records to link Cappe to the crime.  Using technology to link a particular phone with nearby cell towers, phone records showed that earlier in the evening on the night of the murder, Cappe was at or near the house where he was later arrested.  At 10:39 p.m., Cappe called Pemberton, who was located nearby.  Later that evening, Cappe's phone was tracked as traveling towards the place where the shooting took place.  Cappe's phone was traveling together with a phone belonging to Teso Blizzard.  Blizzard's phone arrived near the crime scene around 11:20 p.m.  At that point, Cappe's phone was off the network, meaning its battery had died or he had turned the phone off.  At 11:22 p.m., Blizzard attempted to call Cappe's phone, but the call went straight to voicemail.  At 11:27 p.m., Pemberton called Cappe's phone, but it again went directly to voicemail.  Around this time, Pemberton's phone was connecting to alternating towers that service the apartment complex.

Cappe raises a number of arguments in support of his sufficiency challenge, noting, among other things, the absence of evidence of a motive for Cappe to murder White, the absence of fingerprint or DNA evidence, and the absence of a confession.  He notes that the still photographs of the shooters are grainy and of poor quality.

Applying the standard of review, as we must, we conclude that, based on the evidence summarized above, a rational trier of fact could have found Cappe guilty of murder as well as use of a firearm in the commission of murder. Defense counsel, without objection, urged the jury to observe Cappe in the courtroom. The jury also viewed the camera footage. The jury could consider this evidence, along with the circumstantial evidence tying Cappe to the car, and to the cell phone records and text messages. From all of this evidence, the jury could conclude that Cappe was one of the shooters.

Turning to the conspiracy conviction, a felony conspiracy occurs "when two or more persons agree to commit a felony offense, regardless of whether any act in furtherance of the underlying crime has been performed." *Jones v. Commonwealth*, 279 Va. 295, 301 (2010). "Proof of an explicit agreement is not required and the requisite agreement may be established by circumstantial evidence." *Id.* Finally, "[b]ecause of the nature of the offense, an agreement often may only be established by circumstantial and indirect evidence including the overt actions of the parties." *Id.* The video depicts the men acting jointly to find and kill their victim. A factfinder could conclude that Cappe was one of the participants. The factfinder could readily conclude from the evidence presented that the three men, including Cappe, did not act spontaneously to find and murder White, and that they had conspired to plan the murder. The evidence is thus sufficient for Cappe to be convicted of conspiracy.

II. CAPPE DEFAULTED HIS ASSIGNMENT OF ERROR REGARDING THE COURT OF APPEALS' HARMLESS ERROR HOLDING BECAUSE HE OFFERS NO ARGUMENT OR AUTHORITY ON THAT ISSUE.

The trial court held that Cappe could not offer evidence from a family friend that the person shown on video footage was not Cappe. The Court of Appeals disagreed, writing that the

5

trial court erred in excluding this testimony.  The Court of Appeals, however, further held that the error was harmless.

Whenever the Court of Appeals disposes of an appeal on a ground other than the merits of the issue assigned as error, for example by concluding that an issue is procedurally defaulted or that the purported error was harmless, counsel must not only assign error to this ground but must also brief the assignment of error.  *See* Rule 5:27(d) (requiring briefs to set forth the standard of review and argument for each assignment of error).  The lure of efficiency – cutting and pasting from the Court of Appeals brief to the brief before this Court – can become a snag when the brief contains no assignment of error or argument to challenge the non-merits basis of the Court of Appeals' decision.

Here, Cappe assigned error to the Court of Appeals holding that the error in failing to admit Kirkendall's testimony was harmless.  This barren assignment of error, however, is unsupported by any argument.  Cappe's brief is devoid of any standard of review that would govern our review of this assignment of error,[*] and neither is there any argument concerning why the Court of Appeals erred in holding that the error was harmless.  "The failure to brief an assignment of error constitutes a waiver of the argument."  *Elliott v. Commonwealth*, 267 Va. 396, 422 (2004).  Ours is an adversarial system of justice, in which courts rely on advocates to marshal arguments for their clients.  The Court of Appeals has written, and we agree, that it is not the role of a court to "search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief."  *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992).  Nor is it a Court's "function to comb through the record . . . in order to ferret-out for

---

[*] The standard of review for harmless errors differs when the error is one of constitutional dimension, as opposed to non-constitutional error.  *See Clay v. Commonwealth*, 262 Va. 253 (2001).

ourselves the validity of [appellant's] claims." *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (*en banc*). Consequently, we decline to reach the merits of this assignment of error.

This order shall be published in the Virginia Reports and certified to the Court of Appeals of Virginia and the Circuit Court of the City of Newport News.

A Copy,

Teste:

Clerk