COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Kelsey and Petty
Argued at Alexandria, Virginia


KAIPHA S. BROWN
                                                            OPINION BY
v.      Record No. 0666-09-4            JUDGE ROBERT J. HUMPHREYS
                                                            MAY 4, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

Lisa Joy Harwood, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Kaipha S. Brown ("Brown") appeals his two convictions for embezzlement, in violation

of Code § 18.2-111, and four convictions of uttering, in violation of Code § 18.2-172. On

appeal, Brown contends that the evidence adduced at trial was insufficient to sustain any of his

convictions. For the following reasons, we agree with Brown and reverse.

BACKGROUND

On appeal, "'[w]here the issue is whether the evidence is sufficient, we view the evidence

in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom.'" Lunsford v. Commonwealth, 55 Va. App. 59, 60, 683 S.E.2d 831, 832

(2009) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731

(1995)). So viewed the evidence was as follows.

The facts of this case concern the well-known practice of airline companies to overbook

many of their flights. When a flight is overbooked, these companies compensate passengers who

agree to be "bumped" from the flight, on which they have reserved a seat, by issuing vouchers redeemable for the purchase of a ticket on a future flight.

Brown was a customer service representative for United Airlines ("United") from 1999 to 2005. In July of 2005, United suspended Brown without pay. During his suspension, United stripped Brown of his employee badge and denied him access to the company's computer terminals. United never reinstated Brown's employee privileges.[1]

On July 27, 2005, Brown went to Ronald Reagan Airport in Arlington County and approached a United ticket counter. There, Brown spoke with Lenny Starkweather ("Starkweather"), a customer service representative for United who recognized Brown as a former United employee. Brown presented Starkweather with several Denied Boarding Compensation Vouchers ("vouchers")[2] in Brown's name, and asked Starkweather to exchange the vouchers for airline tickets. The vouchers were issued on July 20, 2005. Brown explained that he no longer worked for United and that he received the vouchers when he was "bumped" from a flight to London. Starkweather processed the transaction and issued Brown airline tickets.

On July 31, 2005, Brown returned to Ronald Reagan Airport and again approached the United ticket counter. This time, Brown spoke with Wanda Keeratisak ("Keeratisak"). Brown presented Keeratisak with several vouchers, which were issued on July 30, 2005, and requested that she issue him airline tickets. Keeratisak complied.

---

[1] Ultimately, United terminated Brown on September 1, 2005, for violating the company's ticketing policy concerning vouchers.

[2] Vouchers are issued by United to its customers who give up their seats, either voluntarily or involuntarily, on flights that are overbooked. Instead of traveling on their original flight, these passengers are given a voucher to be used for future travel. Vouchers are issued by United ticket agents and customer service representatives, and come in the form of a coupon or travel credit. The value of these vouchers ranges from $100-$600. Printed on each voucher is the ID number of the United employee who issued it.

On October 19, 2005, United issued tickets to Ruth Mbazi and Endama Nixon at Ronald Reagan Airport in exchange for vouchers in the name of Brown's father, "Sherman Brown." United issued the vouchers in question on September 24, 2005, against a reservation made by Sherman Brown.

On November 11, 2005, Brown again went to Ronald Reagan Airport and approached the United ticket counter. There, Brown spoke with Ana Morales ("Morales"), United's service director for that location. Once again, Brown presented vouchers to Morales and asked her to issue tickets in the names of Lawrence, Sherleen, Tobias, Lawrence, Jr., and Selma Totimeh.[3] Morales testified that United was aware of some inconsistencies concerning Brown's vouchers and advised its employees to be on the lookout for Brown. However, after speaking with her supervisor, Morales issued the tickets to Brown anyway.[4] Ultimately, United determined that all of Brown's vouchers were issued improperly because the underlying reservations were not paid for or, in the case of the voucher issued to "Sherman Brown," the underlying reservation was honored.

Late in 2005, a United fraud investigator notified Detective Daniel Stafford ("Stafford") of the Metropolitan Washington Airports Authority Police Department[5] of a potential "ticket fraud scheme" orchestrated by Brown. After speaking with a few of the United employees who had issued tickets to Brown in exchange for vouchers, Stafford contacted Brown and asked him to come to the police station for an interview. On January 28, 2006, Brown went to the station

---

[3] Sherleen Totimeh was Brown's sister.

[4] United revoked the Totimehs' tickets.

[5] The Metropolitan Washington Airports Authority Police Department has jurisdiction over Ronald Reagan Airport, Dulles Airport, and the immediate area surrounding them.

voluntarily and spoke with Stafford concerning the vouchers.[6]  Because Brown had not yet been charged with a criminal offense, Stafford informed Brown that he was not under arrest and that he was free to leave at any time.

In the interview, Brown stated that he exploited a "loophole" he found in United's reservation system.  United's reservation system allowed its customers to pay for their tickets at the airport, if they made their reservation within twenty-four hours of flight time.  Brown explained that he would make a reservation on an overbooked flight and then volunteer to be "bumped" from the flight in exchange for a voucher.  Brown would then leave the airport with a voucher but without having paid for his underlying reservation.  In February of 2006, Stafford obtained warrants for Brown's arrest from a magistrate.  However, because Stafford could not locate Brown, he was not arrested until 2007.

Brown was charged with two counts of embezzlement and four counts of uttering a forged instrument.  He requested a trial by jury.  The Commonwealth proceeded on the theory that Brown committed the crime of embezzlement when he, by virtue of his employment with United, obtained improperly issued vouchers, which he later exchanged for airline tickets to the detriment of United.  The Commonwealth further argued that Brown committed uttering when he presented the improperly issued vouchers to United's ticket agents.

At trial, Brown took the stand in his own defense.  Brown testified that, while working at Dulles Airport in June of 2005, he realized that he could exploit United's reservation system when he received vouchers from a European couple traveling in the United States.  According to Brown, the travelers gave him their vouchers because they believed that they would be unable to use them before the vouchers' expiration date.  Brown took the vouchers back to Dulles Airport

---

[6] The interview was videotaped and admitted into evidence at trial.

and attempted to exchange them for tickets.  When the United ticket agent refused to issue the tickets to Brown, he "went behind the counter and issued the tickets."[7]

Regarding the other occasions on which Brown obtained vouchers, Brown testified that he would call United and make a reservation on a flight for him and his family.  United's ticket agent would ask Brown if he planned to pay for the ticket then or at the airport.  Brown testified that he would always elect to pay for the reservation at the airport.  United then booked the flight and assigned seats to Brown and his family, giving Brown a confirmation number for the transaction.  Brown testified that, with the confirmation number and seat assignment in hand, he would go to the airport on the date of his scheduled flight and proceed directly to the United ticket counter.  When United announced that his flight was oversold, Brown would volunteer to give up his seats in exchange for a voucher.  Brown would then leave the airport without having paid for his initial reservation.  Brown further testified that he redeemed vouchers for tickets in the names of his friends and family, but could not recall if he was paid in return.

At the close of the Commonwealth's case-in-chief and again at the close of all the evidence, Brown made a motion to strike all of the charges against him.  Brown argued that the Commonwealth's evidence was insufficient as a matter of law to support the convictions.  The trial court denied Brown's motion, and he was convicted.

This appeal followed.

ANALYSIS

"When considering a challenge that the evidence presented at trial is insufficient, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  Baylor v. Commonwealth, 55

---

[7] Though United suspended, and ultimately, terminated Brown for these actions, Brown was never charged with embezzlement or any other criminal offense for issuing these tickets to himself.

Va. App. 82, 86, 683 S.E.2d 843, 845 (2009) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). "We do not 'substitute our judgment for that of the trier of fact.'" Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

## I. Embezzlement

Brown contends that the evidence adduced at trial was insufficient to sustain his convictions for embezzlement. Specifically, Brown argues that the Commonwealth produced no evidence demonstrating that he was entrusted with the airline tickets by virtue of his employment with United. Brown maintains that, absent such evidence, his convictions cannot be upheld. We agree.

Brown was convicted of two counts of embezzlement, in violation of Code § 18.2-111. That section provides:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, *which he shall have received* for another or for his employer, principal or bailor, or *by virtue of his office, trust, or employment*, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement.

Code § 18.2-111 (emphasis added).

To be convicted under this section, "the Commonwealth must prove that the accused 'wrongfully appropriated to [his] use or benefit, with the intent to deprive the owner thereof, the

- 6 -

property *entrusted* to [him] by virtue of [his] employment or office.'" Dove v. Commonwealth, 41 Va. App. 571, 577, 586 S.E.2d 890, 893 (2003) (emphasis added) (quoting Nestle v. Commonwealth, 22 Va. App. 336, 341, 470 S.E.2d 133, 136 (1996)). "[T]he Commonwealth *must* prove that the defendant was *entrusted* with the property of another." Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 780 (1988) (emphasis added). To entrust is "[t]o give (a person) the responsibility for something . . . after establishing a confidential relationship." Black's Law Dictionary 574 (8th ed. 2004). We find nothing in the record of this case demonstrating that Brown was entrusted with the airline tickets by virtue of his employment with United.

United placed Brown on indefinite suspension in July of 2005. At that time, United stripped Brown of his employee badge and denied Brown access to its computer terminals. Once suspended, Brown had no further access to United's computer system. On July 27, 2005, and again on July 31, 2005, while suspended, Brown entered Ronald Reagan Airport and approached United's ticket counter. Like any other customer, Brown stood in line at the ticket counter and waited for assistance. Brown then presented vouchers to the ticketing agent in exchange for airline tickets, as would any other customer. Though Starkweather and Morales knew that Brown was a former United employee, they treated him just like another customer in processing his transaction. These vouchers were not issued with Brown's employee number, and the Commonwealth did not call any of the employees who issued the vouchers as witnesses.[8] At no point was Brown entrusted with the airline tickets by virtue of his employment with United.

The Commonwealth contends that Brown embezzled the vouchers by exploiting a "loophole" in United's ticketing system that he became aware of by virtue of his employment

---

[8] The record reflects that all travel vouchers contain the employee number of the employee issuing the voucher.

- 7 -

with United. The Commonwealth argues that "Brown had physical access to the computers and was able to have vouchers issued using his ID number or another employee's ID number."[9] While the argument advanced by the Commonwealth on the issue of whether Brown was entrusted with the vouchers by virtue of his employment or received them in the same manner as any other customer may be academically interesting, contrary to the Commonwealth's contention, Brown was not charged with embezzling the vouchers. Rather, the grand jury indictments allege that Brown embezzled *the airline tickets* by virtue of his employment with United.[10] The Attorney General's argument might have merit had Brown been charged with larceny of the vouchers under Code § 18.2-98, but on appeal, it can rise no higher than the charges the Commonwealth's Attorney chose to bring and as discussed above, the record contains no evidence demonstrating that Brown was ever entrusted with *the airline tickets* by virtue of his employment. Thus, we need go no further to reverse Brown's convictions for embezzlement.

## II. Uttering

Brown further contends that evidence at trial was insufficient to sustain his convictions for uttering since the Commonwealth failed to show that the vouchers he presented to United were forgeries. Again, we agree.

Code § 18.2-172 provides, in pertinent part, that "[i]f any person forge any writing, other than such as is mentioned in §§ 18.2-168 and 18.2-170, to the prejudice of another's right, *or utter*, or attempt to employ as true, *such forged writing*, knowing it to be forged, he shall be

---

[9] Brown's employee number was not on any of the vouchers he tendered to United in return for the tickets referred to in the indictments.

[10] The indictments charging Brown with embezzlement for his actions on or about July 27, 2005, and July 31, 2005, read as follows: "[Brown] in the County of Arlington, did wrongfully and fraudulently use, dispose of, conceal, or embezzle *airline tickets* . . . which he shall have received . . . by virtue of his office, trust, or employment . . . ." (Emphasis added).

guilty of a Class 5 felony." (Emphasis added). "Although the term is not defined by statute, the Supreme Court of Virginia has found uttering to be 'an assertion by word or action that a writing known to be forged is good and valid.'" Bennett v. Commonwealth, 48 Va. App. 354, 357, 631 S.E.2d 332, 333 (2006) (quoting Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964)). It is axiomatic that in order to be convicted of uttering, the writing that is the basis for the conviction must, in fact, be a forgery. That is because "'[t]he purpose of the statute against forgery is to protect society against the fabrication, falsification and the uttering of instruments which might be acted upon as being genuine.'" Rodriquez v. Commonwealth, 50 Va. App. 667, 671, 653 S.E.2d 296, 298 (2007) (quoting Muhammad v. Commonwealth, 13 Va. App. 194, 199, 409 S.E.2d 818, 821 (1991)).

A forgery is "defined as 'the *false making or materially altering* with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Id. (emphasis added) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984)). In this case, the Commonwealth failed to establish that the vouchers presented by Brown were either falsely made or materially altered in any way. Though the Commonwealth produced evidence that Brown's vouchers were issued improperly, and in violation of United's ticketing policy, nothing in the record suggests that the vouchers were anything other than what they purported to be.

The Commonwealth argues that, by exploiting a "loophole" in United's ticketing system, Brown caused the improper issuance of vouchers, which were in effect, "'paper lies' that [Brown] employed as tools to steal from United." The Commonwealth points to Rodriquez in support of its contention that Brown's conduct was sufficient to demonstrate forgery, as it constituted a false making. We disagree with the Commonwealth's argument.

In Rodriquez, the defendant was lawfully stopped for a traffic offense and gave the officer his brother's identifying information instead of his own. 50 Va. App. at 670, 653 S.E.2d at 298. Using that false information, the officer issued the defendant two summonses. Id. The defendant then signed each summons with his own name. Id. The trial court found the defendant guilty of two counts of forging a public document and two counts of uttering a forged public document. On appeal, this Court affirmed the convictions, stating "Rodriquez caused Officer Heflin to make a forged summons by providing false information to the officer as he prepared the documents." Id. at 671, 653 S.E.2d at 298. We held that "[a]lthough Rodriquez did not personally write the false information, he provided the information to [Officer] Heflin as he created the documents and, in doing so, Rodriquez engaged in the 'false making' of the two public documents." Id.

We find the facts of this case readily distinguishable from those of Rodriquez. The documents at issue in Rodriquez purported to be summonses issued to the defendant's brother for traffic infractions. In fact, the summonses were intended for the defendant. By providing the officer with false information, the defendant in Rodriquez materially altered the nature of the documents. In contrast to Rodriquez, the vouchers in this case did not contain any false information and were exactly what they purported to be: a coupon or travel credit issued by United to Brown, to be used for future travel. The fact that Brown improperly caused United to issue the vouchers may arguably constitute a false pretense or fraud, but Brown was not so charged, and it is of no significance to his convictions for uttering forged instruments. Because the Commonwealth failed to prove that the vouchers presented by Brown were forgeries, we reverse Brown's convictions for uttering.

CONCLUSION

For the foregoing reasons, we hold that evidence adduced at trial was insufficient to sustain any of Brown's convictions for embezzlement or uttering. Thus, we reverse Brown's convictions and dismiss the indictments against him.

<u>Reversed and dismissed.</u>