COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Bumgardner
Argued at Salem, Virginia


LINDA RUSSELL LAMB

                                            MEMORANDUM OPINION* BY
v.      Record No. 0710-12-3                JUDGE WILLIAM G. PETTY
                                            FEBRUARY 5, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Malfourd W. Trumbo, Judge

Wayne D. Inge (Law Office of Wayne D. Inge, on brief), for
appellant.

Michael T. Judge, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Aaron J. Campbell, Assistant
Attorney General, on brief), for appellee.


Linda Russell Lamb appeals her conviction of obtaining utility service without payment

in violation of Code § 18.2-187.1. On appeal, Lamb argues that the trial court erred in denying

her motion to strike because the evidence was insufficient to prove that she received notice that

her utility service was disconnected, as required by Code § 18.2-187.1(A). For the reasons set

forth below, we affirm the judgment of the trial court.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal. "On appeal, 'we review the evidence in the light most favorable to the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

Lamb argues that the evidence was insufficient to prove that she received notice of the disconnection of her utility service.  In advancing this argument, Lamb contends that Code § 18.2-187.1(C) requires a utility disconnect notice to be sent by registered or certified mail with a return receipt requested, and absent proof of such notice, she cannot be convicted under Code § 18.2-187.1.  We disagree.

"'When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'"  Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (alteration in original) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).  Thus, an "'appellate court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Id. (quoting Britt v. Commonwealth, 276 Va. 569, 573-74, 667 S.E.2d 763, 765 (2008)).  Instead, "'the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  "'This familiar standard gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Id. (quoting Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010)).

This appeal also involves a question of statutory construction.  "'Statutory construction is a question of law which we review *de novo* on appeal.'"  Lynchburg Div. of Soc. Servs. v. Cook,

276 Va. 465, 480, 666 S.E.2d 361, 368 (2008) (quoting Parker v. Warren, 273 Va. 20, 23, 639 S.E.2d 179, 181 (2007)). In construing statutes, we "'apply the plain language of a statute unless the terms are ambiguous.'" Id. (quoting Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)). Our "'primary objective . . . is to ascertain and give effect to legislative intent.'" Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). Legislative intent is discovered "'by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.'" Thomas v. Commonwealth, 59 Va. App. 496, 500, 720 S.E.2d 157, 159-60 (2012) (quoting Lucy v. Cnty. of Albemarle, 258 Va. 118, 129-30, 516 S.E.2d 480, 485 (1999)). Finally, "'[W]e . . . presume that the legislature chose, with care, the words it used when it enacted the relevant statute.'" Seabolt v. Cnty. of Albemarle, 283 Va. 717, 720, 724 S.E.2d 715, 717 (2012) (quoting Addison v. Jurgelsky, 281 Va. 205, 208, 704 S.E.2d 402, 404 (2011)).

Code § 18.2-187.1(A) provides:

> It shall be unlawful for any person knowingly, with the intent to defraud, to obtain or attempt to obtain, for himself or for another, oil, electric, gas, water, telephone, telegraph, cable television or electronic communication service by the use of any false information, or in any case where such service has been disconnected by the supplier and notice of disconnection has been given.

Lamb's argument hinges on the last conjunctive clause: "or in any case where such service has been disconnected by the supplier and notice of disconnection has been given." Code § 18.2-187.1(A). Specifically, Lamb argues that she was not given sufficient notice of the

disconnection of the utility service.  In so arguing, Lamb points to Code § 18.2-187.1(C), which

provides a definition of notice as used in subsection A:

> The word "notice" as used in subsection A shall be notice given in writing to the person to whom the service was assigned.  The sending of a notice in writing by registered or certified mail in the United States mail, duly stamped and addressed to such person at his last known address, requiring delivery to the addressee only with return receipt requested, and the actual signing of the receipt for such mail by the addressee, shall be prima facie evidence that such notice was duly received.

Lamb argues that the statute *requires* notice to be given in writing by registered or

certified mail, return receipt requested.  This reading of the statute is vitiated by the plain

language of the statute.  In order to give proper notice under the statute, the utility service is only

required to give the notice "*in writing to the person to whom the service was assigned.*"  Code

§ 18.2-187.1(C) (emphasis added).  The second part of the statute concerning registered and

certified mail is not a requirement.  Instead, the term "prima facie evidence," as used in the

statute, is merely an evidentiary rule that provides the Commonwealth with a rebuttable

presumption.  See Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 5-5 (7th

ed. 2012) (stating that "statutes often utilize the term prima facie" and that "[t]hese are usually

construed to create a rebuttable presumption, thereby shifting the burden of producing evidence

to the defendant" (citing Huntt v. Commonwealth, 212 Va. 737, 739, 187 S.E.2d 183, 186

(1972))).

Here, the evidence was sufficient to establish that Lamb was given, and received, the

required written notice under Code § 18.2-187.1(C).  Lamb and her husband lived in a house in

Eagle Rock, Virginia.  The electric service, which was provided by Craig-Botetourt Electric

Cooperative (CBEC), was listed in Lamb's name but not her husband's name.  In early 2011,

Lamb had an overdue balance on her electric bill.  Lamb and her husband made an agreement

with CBEC to pay the bill but subsequently breached that agreement. CBEC began the process of disconnecting Lamb's electric service.

CBEC sent Lamb four disconnect notices by regular mail. The first disconnect notice had a disconnect date of February 10, 2011. The second disconnect notice had a disconnect date of March 10, 2011. However, due to the State Corporation Commission's (SCC) policy of not allowing electricity disconnects during winter months, the electricity service was not disconnected by CBEC. The third disconnect notice had a disconnect date of April 10, 2011, but CBEC disconnected the electric service on April 3, 2011. As a result, the SCC ordered the service restored. The fourth disconnect notice was sent on May 10, 2011—after Lamb's electric service was disconnected on April 13, 2011 pursuant to the April 10, 2011 notice.

In summation, a total of four written notices were mailed to Lamb's address, which was the same address listed on Lamb's CBEC account. None of these notices were returned to CBEC as undeliverable. Moreover, Lamb had received past bills at the same address, and those bills had been paid. Beyond this, the record suggests that Lamb's husband contacted the SCC concerning the April 2011 notice, and the SCC forced CBEC to turn the electric service back on because it had been disconnected prior to the date listed on the notice. The totality of the evidence is such that a rational trier of fact could have found, beyond a reasonable doubt, that Lamb received adequate notice of the disconnection of the electric service. Therefore, we hold that the evidence was sufficient to establish that Lamb received the required written notice under Code § 18.2-187.1(C), and we affirm the judgment of the trial court.

III.

For the foregoing reasons, we affirm Lamb's conviction.

Affirmed.